Aimee B. Florin
Jill L. Rosenberg
Kristina C. Hammond
ORRICK, HERRINGTON & SUTCLIFFE LLP
666 Fifth Avenue
New York, New York 10103
Telephone: (212) 506-5000

Attorneys for Defendant
Bank of America, National Association

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EUGENE LUMLEY, Individually and on Behalf
of All Other Persons Similarly Situated,

                              Plaintiffs,

          -against-

UNITED STATES TRUST COMPANY, N.A.,
BANK OF AMERICA, N.A., JOHN DOES #1-
10, Jointly and Severally,

                              Defendants.

No. 08 CV 3993 (TPG) (AJP)


**DEFENDANT BANK OF AMERICA, NATIONAL ASSOCIATION'S
MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S
MOTION FOR APPROVAL OF COLLECTIVE ACTION NOTICE**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................... ii

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF FACTS ......................................................................................... 3

    A Procedural History ........................................................................................ 3

    B. The Putative Class Members' Duties Vary From Individual To Individual ................ 4

        1. U.S. Trust's Business ............................................................................. 4

        2. Bank of America's Business ................................................................... 5

        3. Officer Titles Are Not Related To Actual Job Duties ............................... 5

        4. The Putative Class Members' Duties Vary ............................................. 7

ARGUMENT ........................................................................................................... 10

I. THE COURT SHOULD DENY CONDITIONAL COLLECTIVE ACTION
   CERTIFICATION AND NOTICE ..................................................................... 10

    A. Courts Are Cautious About Issuing Notice That Will Stir-Up Litigation ................ 10

    B. Plaintiff's Evidence Is Insufficient To Meet His Burden ............................. 12

    C. Courts Also Deny Conditional Certification Where A Fact-Intensive Inquiry Is
       Required ........................................................................................... 15

    D. The Bank Should Not Be Required To Disclose Names And Addresses
       Of Potential Plaintiffs Nor Should Notice Be Sent .................................. 17

II. FLSA COLLECTIVE ACTION NOTICE, IF SENT, IS SUBJECT TO A THREE
    YEAR LIMITATIONS PERIOD ....................................................................... 17

CONCLUSION ....................................................................................................... 19

# TABLE OF AUTHORITIES

## FEDERAL CASES

**Page**

*Baba v. Grand Cent. P'ship, Inc.,*
  No. 99-5818, 2000 U.S. Dist. LEXIS 17876 (S.D.N.Y. Dec. 7, 2000) ....................................18

*Barfield v. New York City Health & Hosps. Corp.,*
  No. 05 Civ. 6319 (JSR), 2005 U.S. Dist. LEXIS 288843 (S.D.N.Y. Nov. 17, 2005) .............14

*Belcher v. Shoney's Inc.,*
  927 F. Supp. 249 (M.D. Tenn. 1996).....................................................................................18

*Bunyan v. Spectrum Brands, Inc.,*
  No. 07-CV-0089-MJR, 2008 U.S. Dist. LEXIS 59278 (S.D. Ill. July 31, 2008) ....................11

*Clausman v. Nortel Networks, Inc.,*
  IP 02-0400-C-M/S, 2003 U.S. Dist. LEXIS 11501 (S.D. Ind. May 1, 2003).........................16

*D'Anna v. M/A Com, Inc.,*
  903 F. Supp. 889 (D. Md. 1995).......................................................................................3, 12

*Diaz v. Elecs. Boutique of Am., Inc.,*
  No. 04-CV-0840E, 2005 U.S. Dist. LEXIS 30382 (W.D.N.Y. Oct. 17, 2005)................15, 17

*Flores v. Osaka Health Spa, Inc.,*
  No. 05 Civ. 962 (VM), 2006 U.S. Dist. LEXIS 11378 (S.D.N.Y. Mar. 16, 2006) .....10, 11, 14

*Freeman v. Wal-Mart Stores, Inc.,*
  256 F. Supp. 2d 941 (W.D. Ark. 2003)................................................................11, 15, 16, 17

*Gjurovich v. Emmanuel's Marketplace, Inc.,*
  282 F. Supp. 2d 101 (S.D.N.Y. 2003).....................................................................................12

*H&R Block, Ltd. v. Housden,*
  186 F.R.D. 399 (E.D. Tex. 1999).............................................................................................12

*Hallissey v. America Online, Inc.,*
  No. 99-CIV-3785 (KTD), 2008 U.S. Dist. LEXIS 18387 (S.D.N.Y. Feb. 19, 2008)..............19

*Harper v. Lovett's Buffet, Inc.,*
  185 F.R.D. 358 (M.D. Ala. 1999).............................................................................................19

Page

*Iglesias-Mendoza v. La Belle Farm, Inc.*,
    239 F.R.D. 363 (S.D.N.Y. 2007) ................................................................................18

*Levinson v. Primedia Inc.*,
    No. 02 Civ. 2222 (CBM), 2003 U.S. Dist. LEXIS 20010 (S.D.N.Y. Nov. 6, 2003)...............14

*Mendoza v. Casa de Cambio Delgado, Inc.*,
    No. 07CV2579 (HB), 2008 U.S. Dist. LEXIS 27519 (S.D.N.Y. Apr. 7, 2008) ......................14

*Mike v. Safeco Ins. Co.*,
    274 F. Supp. 2d 216 (D. Conn. 2003) ..................................................................................15

*Morales v. Plantworks, Inc.*,
    No. 05 Civ. 2349 (DC), 2006 U.S. Dist. LEXIS 4267 (S.D.N.Y. Feb. 2, 2006) ....................11

*Morisky v. Pub. Serv. Elec. & Gas Co.*,
    111 F. Supp. 2d 493 (D.N.J. 2000) ......................................................................................15

*Prizmic v. Armour, Inc.*,
    No. 05-CV-2503 (DLI),  2006 U.S. Dist. LEXIS 42627 (E.D.N.Y. June 12, 2006).....3, 12, 17

*Searson v. Concord Mortgage Corp.*,
    No. CV-07-3909 (DRH) (ARL), 2008 U.S. Dist. 28667 (E.D.N.Y. Apr. 8, 2008)................17

*Severtson v. Phillips Beverage Co.*,
    137 F.R.D. 264 (D. Minn. 1991).........................................................................................12

## FEDERAL STATUTES & REGULATIONS

29 U.S.C. § 255(a) ...............................................................................................................17

29 C.F.R. § 541.2...................................................................................................................16
29 C.F.R. § 541.201...............................................................................................................16
29 C.F.R. § 541.202...............................................................................................................16
29 C.F.R. § 541.301...............................................................................................................16
29 C.F.R. §§ 541.400 - 541.402.............................................................................................16
29 C.F.R. § 541.601...............................................................................................................16

Defendant Bank of America, National Association (the "Bank") respectfully submits this memorandum of law in support of its opposition to Plaintiff Eugene Lumley's ("Plaintiff") Motion for Approval of Collective Action Notice and collective action certification pursuant to the Fair Labor Standards Act ("Certification Motion").[1]

## PRELIMINARY STATEMENT

The Court should deny Plaintiff's Certification Motion because he has not provided – and cannot provide – any evidence to demonstrate that the potential class members are "similarly situated" and thus, cannot meet his burden to warrant certification as a collective action under the Fair Labor Standards Act ("FLSA"). As the substantial evidence submitted by the Bank in the form of numerous declarations – including declarations from employees who themselves are potential class members – makes clear, although the individuals whom Plaintiff seeks to join together in the instant action held the same officer title of First Level Officer ("FLO"), that nominal officer title was the **only** thing they had in common.

Indeed, during the six-year limitations period Plaintiff seeks to apply here, individuals with the FLO officer title performed approximately **76 different functional jobs**, with materially different job duties, evidenced by 76 different functional job titles including, but not limited to, jobs as widely diverse as: Administrative Manager – Corporate Communications; Business Strategy Project Specialist – I; Events Planner; Int. Private Banker; Intermediate Staff – Wealth & Investment Services; Investigator Analyst; Junior Trader; Office Manager; Quality Consultant; Research Analyst; Senior Accountant; Senior Business Analyst; Senior Specialist – Training;

---

[1] On May 30, 2008, the Court So Ordered a Stipulation dismissing Defendant United States Trust Company, N.A. from the above-entitled action. Thus, this Opposition is filed on behalf of Defendant Bank of America, National Association.

Specialist, Benefits; Supervisor – Facilities/Real Estate; Team Manager – Operations; and Wealth Manager.

And, these individuals performed these vastly different functions in a multitude of offices and states across the country and in the following **16 different Divisions**: Business Strategy & Marketing; CFO/CAO; Corporate Services; Human Resources; Institutional; Investments Group; National Bank; New York Region; NY Private Banking; Office of the CEO; Office of the CIO; Office of the COO; Operations; Operations & Technology; Oversight; and Product Management.[2]

Against this backdrop, it is not surprising that Plaintiff fails to satisfy his evidentiary burden here; he was employed with a small number of other employees as a "Junior Specialist – Tax Planning," just one of the 76 different functional positions held by individuals with the nominal FLO officer title. And, not only does the sole declaration Plaintiff offers himself lack evidence from which to conclude that his own job duties were non-exempt, it does nothing to undercut the undisputable fact that the potential class members he has identified performed vastly different jobs from one another and from him and thus, were in no way "similarly situated." Courts in the Second Circuit as well as in other jurisdictions around the nation routinely reject preliminary certification under these circumstances and the Court here should do so as well.

---

[2] Plaintiff also attempts to include in his class definition current and former employees who worked at the Bank in "similar non-managerial, non-administrative positions" as individuals with the FLO officer title. (*See* Declaration of William C. Rand, Esq. in Support of Motion to Approve Collective Action Notice ("Rand Dec."), at Exhibit A, p. 1.) Because the Bank – which acquired U.S. Trust in July 2007 – did not utilize the FLO officer title, this definition is defectively vague and over broad. Further, to the extent Plaintiff's proposed definition is read to include the lowest level officer title at the Bank – "Officer" – such a definition would undermine even further Plaintiff's efforts to establish that the putative class members are "similarly situated," insofar as the Bank employs individuals in approximately **750 different functional job positions** with the "Officer" title. (Declaration of Richard V. Michaels ("Michaels Dec.") at ¶ 23.)

Further, because Plaintiff has submitted no evidence whatsoever to substantiate his claim that a collective action is appropriate, the Court should also reject Plaintiff's request that the Bank produce identifying information of potential plaintiffs. To require such a production here in the absence of any evidentiary support of a factual nexus between Plaintiff's situation and those that he claims are similarly situated constitutes nothing more than a "'frivolous fishing expedition conducted by plaintiff at the employer's expense.'" *Prizmic v. Armour, Inc.*, 05-CV-2503 (DLI) (MDG), 2006 U.S. Dist. LEXIS 42627, at *7 (E.D.N.Y. June 12, 2006) (*citing D'Anna v. M/A Com, Inc.*, 903 F. Supp. 889, 893-94 (D. Md. 1995)).

Finally, even if the Court were to authorize notice to the putative class at this time, given that: (1) Plaintiff seeks only to certify a collective action under the FLSA and not a Rule 23 class action under the New York Labor Law; and (2) Plaintiff cannot make out a claim for equitable tolling given the Bank's offer of evidence that the requisite FLSA notices were in fact posted and Plaintiff unquestionably had actual notice of his rights well within the applicable three year limitations period, the Court should deny Plaintiff's request that the FLSA opt-in period be certified for the entire six-year limitations period applicable to New York Labor Law claims.

## STATEMENT OF FACTS

### A.    Procedural History

On April 22, 2008, Plaintiff filed this lawsuit against the Bank and United States Trust Company, N.A. ("U.S. Trust") seeking alleged unpaid overtime compensation under the FLSA on behalf of "all persons who are or were formerly employed by Defendants . . . who were non-exempt employees within the meaning of the FLSA . . . and who were not paid overtime compensation." (Complaint ("Cmplt.") at ¶ 9.) Plaintiff also asserted similar claims under the New York Labor Law. (*Id.* at ¶ 16.)

3

On May 30, 2008, the Court dismissed U.S. Trust from the instant action on the grounds that the Bank is the successor in interest to U.S. Trust because effective February 22, 2008, U.S. Trust merged with and into the Bank and thereafter ceased to exist as a legal entity.

On June 13, 2008, Plaintiff filed the instant Certification Motion asking the Court to conditionally certify this case as a collective action under the FLSA and seeking the Court's permission to send notice and a consent form to the putative class. The class is defined in the Certification Motion as: "[c]urrent and former employees of Bank of America, N.A. and/or United States Trust Company, N.A., who worked as First Level Officers or in other similar non-managerial, non-administrative positions on or after February 11, 2002." (Declaration of William C. Rand, Esq. in Support of Motion to Approve Collective Action Notice ("Rand Dec."), at Exhibit A, p. 1.)[3]  Plaintiff offers only his own declaration in support of his Certification Motion.

**B.    The Putative Class Members' Duties Vary From Individual To Individual**

**1.    U.S. Trust's Business**

Prior to its acquisition by the Bank, U.S. Trust was a corporation providing customized trust, investment management and consulting, tax and estate planning, private banking, alternative investments, philanthropic consulting, and custody services to high net-worth clients. (Declaration of Richard V. Michaels ("Michaels Dec.") at ¶ 9.)

---

[3] Plaintiff filed the instant Complaint on April 29, 2002. Thus, even if the six year limitations period under the New York Labor Law were applicable here – as Plaintiff contends, but the Bank disputes as set forth in more detail below, *see, infra*, at 18-19 – the applicable limitations date would be April 29, 2002, not February 11, 2002.

4

U.S. Trust had approximately 30 offices in more than a dozen states and Washington, D.C. and employed different personnel to work in these locations. (*Id.*) There were approximately 760 individuals who have been employed by U.S. Trust since April 2002 who held the FLO officer title at some point during that period. (*Id.* at ¶ 12.)

### 2.    Bank of America's Business

The Bank acquired U.S. Trust in July 2007. U.S. Trust was merged into the Bank effective February 22, 2008. (*Id.* at ¶ 8.) The Bank is part of Bank of America Corporation, one of the largest banks in the United States. The Bank provides consumer and small business banking, credit cards, investment banking and brokerage, and asset management from more than 6,000 locations in at least 30 states. (*Id.* at ¶ 10.) The officer title of First Level Officer does not exist at the Bank. Thus, the Bank has never employed any employees with that title. The lowest level officer title at the Bank is "Officer." (*Id.* at ¶ 22.) There are currently 15,000 individuals with the "Officer" title at the Bank and tens of thousands of Bank employees have held that officer title since April 2002. (*Id.* at ¶ 24.)

### 3.    Officer Titles Are Not Related To Actual Job Duties

At both U.S. Trust and the Bank, officer titles – including the First Level Officer title and the Officer title – are completely independent of each employee's functional job and actual job duties. (*Id.* at ¶ 18-20.) Officer titles are also unrelated to an employee's status as exempt or non-exempt, which status is determined based on each employee's actual job duties and responsibilities. Thus, while some employees with the Officer or FLO officer title are classified as exempt, others are classified as non-exempt. (*Id.*)

5

Further, with regard to U.S. Trust, for example, because officer titles were in no way related to the actual job duties an employee performed (except to the extent that in some cases an officer title was required to transact certain business on behalf of U.S. Trust), there were employees with the FLO officer title in all of the different functional business areas of U.S. Trust. (*Id.* at ¶ 18.)

Specifically, individuals with the FLO officer title were employed within approximately 25 different "job families" which were utilized by U.S. Trust to organize the different functional positions within the firm, as follows: (1) Business Systems; (2) Accounting; (3) Administrative Support; (4) Compliance; (5) Finance; (6) Human Resources Information Systems ("HRIS"); (7) Operations; (8) Project Management; (9) Corporate Real Estate and Facilities; (10) Staffing; (11) Technology Services; (12) Technology Solutions; (13) Trading Support; (14) Taxation; (15) U.S. Trust Business Development; (16) U.S. Trust Client Relationship Management; (17) U.S. Trust Credit; (18) U.S. Trust Investment Performance Analysis; (19) U.S. Trust Investment Research; (20) U.S. Trust Planning; (21) U.S. Trust Portfolio Management; (22) U.S. Trust Private Banker; (23) U.S. Trust Trading; (24) U.S. Trust Trust & Estate Administration; and (25) U.S. Trust Wealth Manager. (*Id.* at ¶ 18.)

In addition to spanning the approximately 25 different job families, the FLO officer title applied to employees with many different functional job titles and vastly different job duties. During the six-year limitations period Plaintiff seeks to apply here, U.S. Trust employed individuals with approximately 76 different functional job titles, all of whom held FLO officer titles, but were performing distinct and disparate job duties in the wide variety of functional business areas at U.S. Trust, and some of whom were classified as exempt and some as non-exempt. (*Id.* at ¶ 20.)

6

The 76 or more functional job positions also spanned a broad array of subdivisions of U.S. Trust, including, but not limited to, the following the following 16 Divisions and the following 56 Groups within those Divisions:

- **Divisions:** Business Strategy & Marketing; CFO/CAO; Corporate Services; Human Resources; Institutional; Investments Group; National Bank; New York Region; NY Private Banking; Office of the CEO; Office of the CIO; Office of the COO; Operations; Operations & Technology; Oversight; and Product Management.

- **Groups:** Alternative Investments; Banking; BSA; Business Development; Business Strategy & Analysis; California; CFO/CAO; Client Communication; Compliance; Connecticut; Corporate Secretary; Corporate Staff; Credit Office; CTC Consulting; Custody; Equity Research; Equity Trading; Fixed Income; Fixed Income Investments; Florida; Growth Investments; Institutional Business; Institutional Sales; Investment Operations; Investment Research; Investment Risk & Analysis; Investment Solutions; Investments COO Office; Maier Siebel & Baber; Marketing; Mid-Atlantic; Midwest Region; Minnesota; Multi Family Office; National Business Integration; New England; New Jersey Region; North Carolina; Northeast Region; Office of the CFO; Oversight; Planned Giving; Private Asset Management; Projects; Research Operations & Admin; Seattle/Oregon; Security Services; Southeastern Region; Special Fiduciary; Structured Investments; Technology; Texas; Upper New England; Wealth Planning; Wealth Structuring; and Western Region.

(*Id.* at ¶ 21.)

### 4.    The Putative Class Members' Duties Vary

Plaintiff's Certification Motion vastly oversimplifies the job duties at issue in this case. First, Plaintiff's assertion that there are "at least 40 . . . similar First Level Officers" "who performed the same or similar work as myself[,]" (Declaration of Eugene Lumley ("Lumley Dec.") at ¶ 8), is incorrect. (Michaels Dec. at ¶¶ 13-14.) During the entire six year limitations period Plaintiff attempts to put at issue here, there were a small number of individuals employed by U.S. Trust in the functional position of "Junior Specialist – Tax Planner," held by Plaintiff. (*Id.* at ¶ 14.) And, Plaintiff offers no evidence beyond his own conclusory assertions that the

7

limited number of individuals with the same functional job title as he had actually performed "the same or similar work."

Second, Plaintiff provides no basis whatsoever for his claim – implicit in his attempt to include all First Level Officers in the putative class – that all First Level Officers performed "the same or similar work." (Lumley Dec. at ¶ 13.) Indeed, as set forth in more detail above, *see*, *supra*, at 6-7, the multitude of vastly different functional positions, covering business areas of the firm as diverse as Business Strategy & Marketing, Corporate Services, Human Resources, Operations and Product Management, to name a few, to which FLO officer titles were assigned, belies any such claim. And, this point is only made stronger when the "Officer" title at the Bank is considered insofar as it includes approximately **750 different functional job positions**.

Further, as is made clear in the numerous declarations submitted in support of the instant opposition, the actual job duties performed by individuals who held the FLO officer title varied significantly based, in part, on their functional positions, and there is no standard way in which putative class members performed their jobs. For example:

- Sloan Saverine, whose functional job title while an FLO was "Trust Officer," had a "unique hybrid" role that included developing his own client trust accounts and training and overseeing the four Trust Assistants located in other offices in Connecticut aside from the Westport, Connecticut office in which he worked. (Declaration of Sloan Saverine ("Saverine Dec.") at ¶¶ 3, 4, 9.)

- Robert Rudnick, a college graduate with a law degree whose functional job title while an FLO was "Portfolio Assistant," ran portfolios for clients, including a number of fiduciary trusts, in Boston, Massachusetts. (Declaration of Robert Rudnick ("Rudnick Dec.") at ¶¶ 3-6, 10.)

- Jennifer Bouthillier, a college graduate with over 15 years experience in the industry who works in the Osterville, Massachusetts office and whose functional job title while an FLO was "Senior Client Relationship Associate," is the sole investment advisor on a number of client accounts for which she decides the asset allocation and recommends changes to the portfolio to ensure it is properly diversified.  (Declaration of Jennifer Bouthillier ("Bouthillier Dec.") at ¶¶ 3-4, 6.)

- Diana Hyde, who has a bachelor's degree in economics and is "credit trained," and whose functional job title while an FLO in New York City was "Intermediate Private Banker," managed a number of client accounts and handled a myriad of client related tasks, including underwriting loans. (Declaration of Diana Hyde ("Hyde Dec.") at ¶¶ 3-4, 7-9.)

- Stella Thomas, whose functional job title while an FLO was "Supervisor Administrative Support," was responsible for running U.S. Trust's office in Stamford, Connecticut.  Among her responsibilities were ensuring office bills were paid, coordinating with vendors for outside services, managing office build-outs and overseeing the office's charitable contributions. (Declaration of Stella Thomas ("Thomas Dec.") at ¶¶ 3-4.)

- Gregory Pannell, who as Vice President, Manager of HRIS, supervised two employees with the FLO officer title and the functional title of "Senior Specialist, HRIS," declares that the Senior Specialists were responsible for creating and maintaining employee metrics data, as well as creating the analyses and presentations about U.S. Trust's workforce and trends in the broader industry, for use by the Human Resources Department. (Declaration of Gregory Pannell ("Pannell Dec.") at ¶¶ 2, 6-7.)

- Colin Korzec, former Manager of the Boston estate settlement group, who managed several employees with the FLO officer title and the functional title of "Intermediate Staff – Trusts and Estates," declares that the Intermediate Staff employees almost all had law degrees and provided significant assistance in the preparation of decedent's estate tax returns, as well as assisting with post-mortem planning, determining what elections to take for tax purposes, and obtaining valuations for the tax returns. (Declaration of Colin Korzec ("Korzec Dec.") at ¶¶ 4-6.)

- Kathryn Mosier, former Senior Vice President, Financial Planner in Charge of the New York Financial Planning Group, supervised an individual with an FLO officer title whose functional title was "Financial Analyst."  The Financial Analyst was a Certified Financial Planner who was responsible for gathering and interpreting data for all of the financial modeling the department would perform for its clients, which work required a "high level of technical expertise."  (Declaration of Kathryn Mosier ("Mosier Dec.") at ¶¶ 2-3.)

9

The employees who held FLO officer titles were also given tremendous discretion and autonomy to perform their work. (*See* Hyde Dec. at ¶ 11; Korzec Dec. at ¶ 6; Mosier Dec. at ¶ 3; Rudnick Dec. at ¶ 11; Saverine Dec. at ¶ 15; Thomas Dec. at ¶ 10.) And, among other things, the way in which they performed their jobs, and the time they spent on any task, varied from person to person. (Bouthillier Dec. at ¶ 7; Hyde Dec. at ¶¶ 12-13; Korzec Dec. at ¶ 10; Rudnick Dec. at ¶ 5; Saverine Dec. at ¶¶ 10, 15.)

In addition, the FLO officer title is not related to an employee's status as exempt or non-exempt, which status was determined based on each employee's actual job duties and responsibilities. (Michaels Dec. at ¶ 18.) Thus, while some employees with the FLO officer title were classified as exempt, others with the FLO officer title were classified as non-exempt. (*Id* at ¶¶ 15-17.) And, with respect to the individuals with the FLO officer title who were classified as exempt, a variety of exemptions may have applied, including, but not limited to, the administrative, professional, computer employee and highly compensated exemptions. (*Id.* at ¶ 17.)

In sum, there are an extremely large number of different functional job positions held by individuals with the FLO officer (and Officer) title, some of who are classified as exempt and some of whom are classified as non-exempt, as well as significant differences in how these individuals perform their jobs on a daily basis, making certification inappropriate.

## ARGUMENT

## I. THE COURT SHOULD DENY CONDITIONAL COLLECTIVE ACTION CERTIFICATION AND NOTICE

### A. Courts Are Cautious About Issuing Notice That Will Stir-Up Litigation

To certify a collective action, the Court must evaluate whether the lead plaintiff and the proposed collective action group are "similarly situated." *Flores v. Osaka Health Spa, Inc.*, No.

10

05 Civ. 962 (VM) (KNF), 2006 U.S. Dist. LEXIS 11378, at *4 (S.D.N.Y. Mar. 16, 2006).
Courts in the Second Circuit apply a two-step approach. *Id.* at *4-5. The first step – which is the
subject of Plaintiff's motion – requires the Court to "examine[ ] the pleadings and affidavits to
determine whether the named plaintiffs and putative class members are similarly situated" for
purposes of conditionally certifying the class and permitting notice to be sent to putative class
members. *Morales v. Plantworks, Inc.*, No. 05 Civ. 2349 (DC), 2006 U.S. Dist. LEXIS 4267, at
*3 (S.D.N.Y. Feb. 2, 2006).[4]

Courts have found a class is "similarly situated" for these purposes if plaintiffs prove that
they perform the same tasks, under the same conditions and were compensated in the same
manner or that the named plaintiff and "potential plaintiffs together were victims of a common
policy or plan that violated the law." *Flores*, 2006 U.S. Dist. LEXIS, at *4. On the other hand,
courts will not find a class "similarly situated" at this first stage where evidence shows that there
are material differences in the duties and responsibilities of proposed class members or they were
not together "victims of a common policy or plan that violated the law." *See, e.g., Bunyan v.
Spectrum Brands, Inc.*, No. 07-CV-0089-MJR, 2008 U.S. Dist. LEXIS 59278, at *7 (S.D. Ill.
July 31, 2008) (denying conditional collective action certification where "[p]laintiffs provide
nothing to indicate that they are similarly situated with respect to their employment duties and
circumstances"); *Freeman v. Wal-Mart Stores, Inc.*, 256 F. Supp. 2d 941, 944, 945 (W.D. Ark.
2003) (denying preliminary certification where defendant introduced evidence that showed there
were material differences in duties and responsibilities of proposed class members).

---

[4] Assuming the Court approves the first-step, then the case proceeds through discovery. Once discovery
is complete, the employer can move to decertify the class if discovery reveals that the claimants are not
similarly situated. *See Morales v. Plantworks, Inc.*, No. 05 Civ. 2349 (DC), 2006 U.S. Dist. LEXIS
4267, at *3 (S.D.N.Y. Feb. 2, 2006).

OHS East:160465060.3

The plaintiff bears the burden of proving that he or she is similarly situated with the class he or she seeks to represent. *See Prizmic v. Armour, Inc.*, No. 05-CV-2503 (DLI) (MDG), 2006 U.S. Dist. LEXIS 42627, at *5-6 (E.D.N.Y. June 12, 2006). And, while the standard for this first step may be lenient, courts are cautious about approving notice to the putative class for fear of stirring-up litigation. *See, e.g., Severtson v. Phillips Beverage Co.*, 137 F.R.D. 264, 266-67 (D. Minn. 1991) (courts "have a responsibility to avoid the "stirring up" of litigation through unwarranted solicitation"); *H&R Block, Ltd. v. Housden*, 186 F.R.D. 399, 401 (E.D. Tex. 1999) (denying FLSA collective action certification and noting that "this court is mindful that it, like practicing attorneys, has a responsibility to refrain from stirring up unwarranted litigation); *D'Anna v. M/A-Com, Inc.*, 903 F. Supp. 889. 894 (D. Md. 1995) (same).

> Although the plaintiff's burden at this initial stage is not onerous . . . . [a] plaintiff must provide actual evidence of a factual nexus between his situation and those that he claims are similarly situated rather than mere conclusory allegations. . . . Absent such a showing, an employer may be 'unduly burdened by a frivolous fishing expedition conducted by plaintiff at the employer's expense.'

*Prizmic*, 2006 U.S. Dist. LEXIS 42627, at * 7 (citation omitted).

### B.    Plaintiff's Evidence Is Insufficient To Meet His Burden

The concern of stirring up litigation and burdening the Bank with a fishing expedition is particularly relevant here, where Plaintiff has offered no evidence to establish the existence of similarly situated individuals. As an initial matter, a plain reading of Plaintiff's declaration makes clear that he has not satisfied even the threshold requirement for preliminary certification; that is, that **he** was in fact non-exempt, yet was not paid overtime. *See Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 101 (S.D.N.Y. 2003) (plaintiff must provide evidence "from which a jury could conclude that the position[ ] he held w[as], in fact, non-exempt").

12

In fact, Plaintiff provides almost no detail about his own actual job duties, relying on just **one** sentence in his 14 paragraph declaration – "I worked predominantly preparing individual tax returns using software named 'Pro Systems' and preparing household employee payroll tax returns using software named '1099-Etc.'" (Lumley Dec. at ¶ 3) – which offers no real insight into the issue of whether he was properly classified as an exempt employee.

More significantly, Plaintiff fails to offer any evidence that potential class members – individuals with FLO (and "Officer") officer titles – are "similarly situated." As explained above, *see, supra,* at 6-8, there are dozens of vastly different functional jobs held by individuals with the FLO title at issue here (hundreds when the Bank's "Officer" title is included), the duties of which positions vary greatly and with which Plaintiff has no familiarity. Given his complete lack of familiarity with any of the functional job positions held by individuals with the FLO officer title other than himself or the actual job duties they performed, Plaintiff offers only the following conclusion and speculation with regard to the individuals whom he is attempting to include in the putative class:

- I am aware and have personal knowledge of other persons employed by Defendants as First Level Officers or similar titles who performed the same or similar work as myself.

- Upon information and belief there are at least 40 of such similar First Level Officers.

- I and the other similar First Level Officer employees regularly worked more than 40 hours per week for Defendants.

- I know that others like me were not paid overtime by Defendants.

- I know that other First Level Officers worked more than 40 hours in a workweek because I worked alongside some of the First Level Officer employees and witnessed the hours that they worked.

(Lumley Dec. at ¶¶ 8-11.)

13

Not only does Plaintiff fail to offer any actual evidence with regard to whether he or the other First Level Officers he describes were, in fact, non-exempt, and what their actual job duties were, he fails to offer the most basic information such as names or other identifying information for those individuals he claims are "similarly situated" to him.  His proffer is insufficient as a matter of law.  *See Mendoza v. Casa de Cambio Delgado, Inc.*, No. 07CV2579 (HB), 2008 U.S. Dist. LEXIS 27519, at *2 (S.D.N.Y. Apr. 7, 2008) ("[w]hile there is a low bar for allegations required for collective action certification, the lack of factual allegations in the affidavits or complaint to show that the Plaintiffs are similarly situated with the other employees fail to meet the bar); *Barfield v. New York City Health & Hosps. Corp.*, No. 05 Civ. 6319 (JSR), 2005 U.S. Dist. LEXIS 28884, at *3 (S.D.N.Y. Nov. 17, 2005) (collective action certification denied where "plaintiff presents nothing but limited anecdotal hearsay" to establish the existence of similarly situated individuals); *Flores*, 2006 U.S. Dist. LEXIS 11378, at *3 (where plaintiff had no knowledge of work performed by other potential class members and relied on "broad conclusory allegations and nothing more," motion for collective action certification denied.)

Further, Plaintiff's claim that "numerous other similar employees were not paid overtime at a rate of time and one half as part of a common, illegal policy of the Defendants[,]" (Certification Motion at 7), is belied by the fact that many of the individuals who held the FLO officer title and who Plaintiff seeks to include in the putative class, were in fact classified as non-exempt and thus, did receive overtime at a rate of time and one half.  (Michaels Dec. at ¶ 15-16.) *See Levinson v. Primedia Inc.*, No. 02 Civ. 2222 (CBM), 2003 U.S. Dist. LEXIS 20010 (S.D.N.Y. Nov. 6, 2003) (plaintiffs "failed to meet their burden" for collective action certification where "they have failed to make a sufficient showing that . . . other potential plaintiffs" were "victims of a common policy or plan that violated the law") (citation omitted).

Moreover, as set forth in detail above, *see, supra*, at 7-10, the evidence submitted by the Bank confirms that the duties of the individuals with the FLO officer title varied significantly.

In sum, the Court should deny preliminary class certification because Plaintiff's evidence is insufficient and there are material differences between the job duties performed by the putative class members. *See Freeman v. Wal-Mart Stores, Inc.*, 256 F. Supp. 2d 941, 945 (W.D. Ark. 2003) (appropriate for court to inquire into differences in duties and responsibilities of employees even at early stage; material differences precluded certification).

## C.    Courts Also Deny Conditional Certification Where A Fact-Intensive Inquiry Is Required

Given the myriad of different functional jobs Plaintiff seeks to include in the proposed class, in certifying the instant class the Court would have no choice but to engage in a fact-intensive inquiry of each potential plaintiff's situation. It is precisely this type of individualized inquiry which the courts in the Second Circuit have made clear renders a collective action inappropriate. *See Diaz v. Elecs. Boutique of Am., Inc.*, No. 04-CV-0840E, 2005 U.S. Dist. LEXIS 30382, at *4 (W.D.N.Y. Oct. 17, 2005) ("class treatment inappropriate" where "a highly fact-specific and detailed analysis of each [proposed class member's] duties is required"); *Mike v. Safeco Ins. Co.*, 274 F. Supp. 2d 216, 221 (D. Conn. 2003) (denying conditional certification and holding that because "court would have to engage in an ad hoc inquiry for each proposed plaintiff to determine whether his or her job responsibilities were similar to [the plaintiff] . . . [he] has not presented a firm basis for the court to identify similarly situated individuals and has failed to meet his burden under the FLSA"). *See also Morisky v. Pub. Serv. Elec. & Gas Co.*, 111 F. Supp. 2d 493, 499 (D.N.J. 2000) (rejecting proposed collective action where the "exempt or non-exempt status of potentially hundreds of employees would need to be determined on a job-by-job, or more likely, an employee-by-employee basis").

And courts have so held even at the preliminary class certification stage. *See, e.g.,* *Clausman v. Nortel Networks, Inc.,* IP 02-0400-C-M/S, 2003 U.S. Dist. LEXIS 11501, *9-10 (S.D. Ind. May 1, 2003) (denying motion to facilitate notice because "liability to each plaintiff will depend on whether that plaintiff was correctly classified as an 'outside salesman,' [and] the Court will be required to make a fact-intensive inquiry into each plaintiff's employment situation"); *Freeman,* 256 F. Supp. 2d at 945 (appropriate for court to inquire into differences in duties and responsibilities of employees even at early stage; material differences precluded certification).

Further, the presence of several exemptions that may apply to the putative class members here, each of which requires individual determination about whether a particular employee is properly classified as exempt, also precludes class certification. *See* 29 C.F.R. § 541.2 ("the exempt or nonexempt status of any particular employee must be determined on the basis of whether the employee's salary and duties meet requirements of the regulations in this part"); 29 C.F.R. § 541.202 (whether an employee is exempt "must be applied in the light of all the facts involved in the particular employment situation in which the question arises").

Here, exemptions that may apply to this class include, but are not limited to, the administrative exemption,[5] the highly compensated employee exemption,[6] the professional exemption[7] and the computer employee exemption.[8] In deciding whether an employee fits into one or more of the many exempt categories delineated in the FLSA, the Court must conduct an

---

[5] *See* 29 C.F.R. § 541.201.

[6] *See* 29 C.F.R. § 541.601.  Some of the putative class members earn $100,000 a year or more, which is the threshold amount for this exemption. (Michaels Dec. at ¶ 17.)

[7] *See* 29 C.F.R. § 541.301.

[8] *See* 29 C.F.R. §§ 541.400 – 541.402.

OHS East:160465060.3

inquiry into each employee's specific job duties, which individualized assessment precludes collective action certification here.

### D.    The Bank Should Not Be Required To Disclose Names And Addresses Of Potential Plaintiffs Nor Should Notice Be Sent

Because "significant differences [in the putative class] are apparent at the outset and discovery cannot resolve the defects in [P]laintiff's claims" the Court should reject Plaintiff's request for the disclosure of names and address of putative class members. *Diaz*, 2005 U.S. Dist. LEXIS 30382, at *19. Doing so is particularly appropriate where, as here, "[P]laintiff submitted no evidence whatsoever to substantiate his claims that a collective action is appropriate." *Prizmic*, 2006 U.S. Dist. LEXIS 42627, at *11.

Indeed, it is "the Court's responsibility to intervene in the management of this litigation" and "[i]t would be a waste of the Court's and the litigant's time and resources to notify a large and diverse class only to later determine that the matter should not proceed as a collective action because the class members are not similarly situated." *Freeman*, 256 F. Supp. 2d at 945. *See also Searson v. Concord Mortgage Corp.*, No. CV-07-3909 (DRH) (ARL), 2008 U.S. Dist. 28667, at *1 (E.D.N.Y. Apr. 8, 2008) (request for names and addresses of potential plaintiffs denied where conditional certification had not been granted).[9]

## II.    FLSA COLLECTIVE ACTION NOTICE, IF SENT, IS SUBJECT TO A THREE YEAR LIMITATIONS PERIOD

The statute of limitations in an FLSA action is two years, three years if the plaintiff proves the violation was willful. 29 U.S.C. § 255(a). Only individuals who were employed and held the FLO officer title during the maximum FLSA statute of limitations period should receive

---

[9] If the Court were to order the disclosure of names and last-known addresses of all "potential plaintiffs" as defined by Plaintiff, the five (5) business day "deadline" set forth in Plaintiff's motion papers is not reasonable given the scope of the information requested. Thus, the Bank respectfully requests that it be

notice of pendency. *See, e.g., Belcher v. Shoney's Inc.*, 927 F. Supp. 249, 252 (M.D. Tenn. 1996) (notice would be sent only to relevant employees who were employed in three-year period prior to date complaint was filed). Accordingly, Plaintiff's request to certify the FLSA opt-in class for the six-year limitations period set forth in the New York Labor Law should be denied.

First, while it is true, as Plaintiff argues, that failure to post the required FLSA notice may equitably toll the statute of limitations "unless and until an employee has actual notice of his rights," *See Baba v. Grand Cent. P'ship, Inc.*, No. 99-5818, 2000 U.S. Dist. LEXIS 17876, at *4 (S.D.N.Y. Dec. 7, 2000), the Bank has offered evidence that the notices were in fact posted. (*See* Michaels Dec. at ¶ 5.) And, to the extent the Court believes an issue of fact exists with regard to the posting of the notices, as the Court has recognized previously, it is prudent to permit discovery related to this issue before deciding on the applicable statute of limitations and notice period. *Baba*, 2000 U.S. Dist. LEXIS 17876, at *2. *See also Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 369 (S.D.N.Y. 2007) ("[t]he court is inclined to follow *Baba* and to permit plaintiffs full discovery on the adequacy of notice and the applicability of the equitable tolling doctrine before deciding what the statute of limitations is.")

Second, because Plaintiff fails to seek class certification under the New York Labor Law, the longer state law limitations period in inapplicable here. Indeed, unlike the plaintiff in *Iglesias-Mendoza* – upon which Plaintiff relies heavily – who was pursuing certification of both an FLSA collective action and a Rule 23 class action under the New York Labor Law, Plaintiff here has elected at this juncture not to seek class certification for his state law claims because, as he himself recognizes, the Rule 23 standard is significantly more demanding. Given Plaintiff's

---

given thirty (30) calendar days from the date of any Order by the Court to produce such information.

decision to seek only certification of an FLSA collective action, there is no basis to apply the New York Labor Law's six year limitations period here.

Thus, even if the Court finds that Plaintiff has proven the appropriateness of circulation of notice at this time – which the Bank disputes strenuously, as set forth above, *see, supra,* at 11-18 – the notice should be subject to the FLSA's three year statute of limitations.[10]

## CONCLUSION

Based on the foregoing, the Bank respectfully requests that this Court deny Plaintiff's motion in its entirety with prejudice. If, however, the Court authorizes notice, it should be limited to the three year FLSA limitations period and the other modifications set forth above should also be made. In addition, to ensure fairness, the Court should order the parties to meet and confer as to the appropriate language in the notice.

Dated: August 14, 2008

Respectfully submitted,

ORRICK, HERRINGTON & SUTCLIFFE LLP
Attorneys for Defendant

By:

Aimee B. Florin
Jill L. Rosenberg
Kristina C. Hammond
666 Fifth Avenue
New York, New York 10103
212-506-5000

---

[10] Further, if the Court determines that notice may be circulated at this time, there are a number of modifications that the Bank believes should be made to the proposed notice, including, but not limited to: (1) a narrowing of the class definition; (2) the inclusion of an explicit statement regarding what costs, if any, plaintiffs will incur, *see Hallissey v. America Online, Inc.*, No. 99-CIV-3785 (KTD), 2008 U.S. Dist. LEXIS 18387 at *12 (S.D.N.Y. Feb. 19, 2008); and (3) a shortening of the opt-in period, *see Harper v. Lovett's Buffet, Inc.*, 185 F.R.D. 358, 365 (M.D. Ala. 1999) (setting a 45-day limit for opt-in period).

The notice also requires several changes in language to ensure that it does not favor either side and allows the putative class members to make an informed decision about whether they should opt-in to the action. Thus, if the Court grants Plaintiff's Certification Motion, the Bank respectfully requests that the Court order the parties to meet and confer as to the appropriate language to include in the notice and, if the parties are unable to reach agreement regarding the language, that the parties be permitted to brief any unresolved issues regarding the notice.

OHS East:160465060.3