UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EUGENE LUMLEY, Individually and on Behalf of All Other Persons Similarly Situated,

    Plaintiffs,

-against-

UNITED STATES TRUST COMPANY, N.A., BANK OF AMERICA, N.A., JOHN DOES #1-10, Jointly and Severally,

    Defendants.

No. 08 CV 3993 (TPG) (AJP)

**DECLARATION OF COLIN KORZEC IN SUPPORT OF DEFENDANT BANK OF AMERICA'S OPPOSITION TO PLAINTIFFS' MOTION FOR APPROVAL OF COLLECTIVE ACTION NOTICE**

I, Colin Korzec, declare as follows:

1. I have personal knowledge of the matters contained in this declaration, except where such facts are stated to be based on information and belief, and those facts I believe to be true. I make this declaration in support of Bank of America, National Association's opposition to Plaintiff Eugene Lumley's Motion for Approval of Collective Action Notice. If called to testify to the matters set forth in this declaration, I could do so competently.

2. I am currently a Senior Vice President and Regional Estate Executive for the New England and Metro-Atlantic Regions for U.S. Trust, Bank of America Private Wealth Management. In this role, I manage U.S. Trust's Estate Settlement Department for these regions, which consists of over fifty employees in seven offices. I have been in this role since approximately October, 2007. Prior to assuming this role, from March 2006 through September, 2007 I was the Manager of the Boston Estate Settlement group within the New England region, in which role I managed approximately ten employees. I have been employed by Bank of America and/or its predecessor companies for approximately eighteen years, starting out at State Street Bank in 1990 (which later sold its Private Asset Management business to U. S. Trust Company in 2004).

3.    The Estate Settlement Department administers estates and trusts of U.S. Trust clients who have passed away. In some instances, clients have named U.S. Trust as the executor in their wills, in which case my Department carries out the duties and responsibilities of the Bank as the executor of the will. In other instances, an individual, such as a family member, is named as executor, but seeks assistance in administering the decedent's estate. My Department offers assistance to executors in settling complex estates for high net worth clients.

4.    Prior to the acquisition of U.S. Trust by Bank of America, I managed several First Level Officers ("FLO") in my role as Manager of the Boston estate settlement group. The functional title of these FLOs at the time was "Junior Officer." Since the acquisition, FLOs in this position have had the functional job title of "Administrator." Early in my career at State Street Bank in the 1990s, I worked in the same functional position myself.

5.    Junior Officers assisted in preparing the decedent's estate tax return, as well as assisting with post-mortem planning, determining what elections to take for tax purposes, and obtaining valuations and including those valuations on the estate tax return. Junior Officers also tracked information about the decedent's assets and administered the estate's bills and expenses.

6.    Almost all of the Junior Officers I managed had law degrees. It was necessary for them to have a grasp of fiduciary and tax concepts to perform their jobs. Custody, investment, fiduciary, administrative, accounting, legal and tax expertise can all be required in the settlement of an estate. Junior Officers had to spot issues, and often encountered issues requiring interpretation when preparing the estate tax return. They often resolved those significant and complex issues themselves and relied on their own discretion and independent judgment to do so. However, they also had to rely on their own discretion and independent judgment to determine what issues they could resolve themselves and what issues should be elevated to a higher level of management for review and input.

7.  Junior Officers also engaged in frequent client contact as part of their routine job duties. They were often the main point of contact with the client. Such client contact must be done carefully and in a thoughtful manner. Our clients have often just lost close family members, and it can be an emotionally difficult time. Junior Officers had to elicit needed information from the client and convey highly technical information in lay-person's terms to the client while at the same time being sensitive to the client's emotional state. The nature of these interactions necessarily varied from client to client and estate to estate and I relied on my employees to exercise sound judgment and discretion in each instance to determine how best to interact with the client at hand to get the job done.

8.  Junior Officers were involved in business development and marketing efforts for the Department. They were encouraged to join attorney bar associations and committees of bar associations and various estate planning organizations to establish business contacts and become known within our small and highly specialized field.

9.  When I was in this position myself, I worked with minimal supervision and was also given as much latitude as I was able to demonstrate that I was capable of handling in administering the estates that I was assigned.

10. Junior Officers were treated as professionals, and they could choose to use their vacation time whenever they felt it was appropriate based on their workload. In terms of day-to-day comings and goings from the office, they could take lunch and other breaks when they chose to do so.

11. Junior Officers were paid an annual salary, which was based on a pay scale that was set when they joined the Company. Merit increases were awarded on an annual basis based on the individual's year-end performance evaluations. On occasion, a Junior Officer would receive an additional salary increase mid-year for his or her own exemplary performance.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 11th day of August, 2008 at Boston, Massachusetts.

_____
Colin Korzec