UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EUGENE LUMLEY, Individually and on Behalf of All Other Persons Similarly Situated,

　　　　　　　　　　　Plaintiff,

-against-

UNITED STATES TRUST COMPANY, N.A., BANK OF AMERICA, N.A., JOHN DOES #1-10, Jointly and severally,

　　　　　　　　　　　Defendants.

No. 08 CV 3993 (TPG) (AJP)

**DECLARATION OF KATHRYN MOSIER IN SUPPORT OF DEFENDANT BANK OF AMERICA'S OPPOSITION TO PLAINTIFFS' MOTION FOR APPROVAL OF COLLECTIVE ACTION NOTICE**

I, Kathryn Mosier, declare as follows:

1. I have personal knowledge of the matters contained in this declaration, except where such facts are stated to be based on information and belief, and those facts I believe to be true. I make this declaration in support of Bank of America, National Association's opposition to Plaintiff Eugene Lumley's Motion for Approval of Collective Action Notice. If called to testify to the matters set forth in this declaration, I could do so competently.

2. I am currently a Managing Director, Metro-Atlantic Wealth Planning Solutions Director for Bank of America, which position I have held since approximately February 2008. Prior to that, I was a Senior Vice President, Financial Planner in Charge of the New York Financial Planning Group. This is the role that I held prior to Bank of America's acquisition of United States Trust Company, N.A. ("U.S. Trust"). While in this role at U.S. Trust I managed an individual with an officer title of First Level Officer ("FLO") in the Financial Planning Group, whose functional title was "Financial Analyst" or simply "Analyst." The Analyst I managed was a Certified Financial Planner ("CFP").

3.   The Financial Planning Group I managed created and executed wealth management strategies for high net worth clients tailored to the clients' individualized needs. As a member of the Financial Planning team, the Analyst's role was to gather, input and interpret data for all of the modeling our department would perform for our clients. The Analyst would review the client's financial statements, bank accounts, brokerage accounts, and insurance policies, input them into a software program and run various models to perform analyses of the data. This work required a high level of technical expertise, as well as the exercise of discretion and independent judgment, as I relied on the Analyst to interpret the client's financial information, classify that data, and create the necessary analyses that would add value in determining the optimal wealth strategy for a particular client.

4.   When clients would have unique scenarios that required modeling, the Analyst would be responsible for creating the appropriate model that would analyze and interpret the data. As a result, the Analyst's job would vary from day to day based on the clients' individualized needs. For example, if a client wanted a model of an estate plan, this could take two to three days to create as these are highly complex models.

5.   The Analyst's work schedule could also vary day to day based on her workload. She was treated as a professional, who was free to come and go as she pleased as long as she completed her work. I did not monitor when she arrived or left the office.

6.  The Analyst I was responsible for managing was paid a salary and a discretionary bonus, which bonus was based in part on her individual performance and in part on the performance of our department as a whole.

I declare under penalty of perjury under that the foregoing is true and correct.

Executed at New York, New York, on August 11, 2008.

_____
Kathryn Mosier