UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EUGENE LUMLEY, Individually and on Behalf of All Other Persons Similarly Situated,

    Plaintiff,

-against-

UNITED STATES TRUST COMPANY, N.A., BANK OF AMERICA, N.A., JOHN DOES #1-10, Jointly and severally,

    Defendants.

No. 08 CV 3993 (TPG) (AJP)

**DECLARATION OF ROBERT RUDNICK IN SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR APPROVAL OF COLLECTIVE ACTION NOTICE**

I, Robert Rudnick, declare as follows:

1. I have personal knowledge of the matters contained in this declaration, except where such facts are stated to be based on information and belief, and those facts I believe to be true. I make this declaration in support of Bank of America, National Association's opposition to Plaintiff Eugene Lumley's Motion for Approval of Collective Action Notice. If called to testify to the matters set forth in this declaration, I could do so competently.

2. I am currently a Wealth Manager at Bank of America, National Association ("Bank of America"). Prior to my employment with Bank of America, I was employed by the United States Trust Company, N.A. ("U.S. Trust") where I held the officer title of First Level Officer ("FLO"). I understand that the Plaintiff in this case is seeking to represent other current and former Bank of America and U.S. Trust employees, including me. I know that I would be eligible to participate as a member of the class if this case is certified as requested by Plaintiff Eugene Lumley. I understand that the lawyers who interviewed me and assisted in preparing this declaration for me represent Bank of America and do not represent my personal interests. I am making this statement voluntarily and without coercion.

3. I started working at U.S. Trust in January of 2004 as an administrator for a Senior Vice President Portfolio Manager. Eight or nine months after that, I took on some of my own accounts, but continued in the administrative role as well. In the spring or summer of 2005, I was promoted to the FLO officer title. I never used the FLO designation and referred to myself as "Trust Officer"; however, I understand that U.S. Trust's official records list my functional title as "Portfolio Assistant." After my promotion, I focused exclusively on my own accounts. When we transitioned to Bank of America, my duties essentially remained the same, though my functional title changed to Wealth Manager.

4. I have a college degree and graduated from law school.

5. I believe I had a unique position as a Wealth Manager at U.S. Trust, and now at Bank of America, because I have a strong knowledge of the administrative systems, but I also handle my own accounts. In my experience, I have found that the duties performed by other individuals in my office with the FLO officer title vary significantly. These duties differ based on the functional position, knowledge level and experience of the individual at issue. There are even differences within the Wealth Manager position – some focus more on the fiduciary side and some on the investment side. These differences usually occur because of our education or prior work experience. Given my legal background, I tend to handle more fiduciary trusts than do others.

6. I do not really have a "typical day" because my days vary a lot based on the needs of my clients. I run portfolios for about 195 accounts, which include revocable, irrevocable, charitable and retirement accounts. My accounts tend, however, to be small irrevocable trusts, which often have a lot of discretionary requests. A discretionary request is a request for funds requiring trustee approval; but in order to process it, I have to read the trust and ancillary documents to determine whether it is permissible under the language of the trust. For example, I recently handled a discretionary request for a client with a small trust. I worked closely with the client to gather information regarding their particular request as well as pertinent financial information. I then presented the case in front of our Trust Administration Committee,

a board of senior officers and portfolio managers who decide on the validity of discretionary requests, and am now coordinating with our outside co-trustee for their approval as well.

7. I review my accounts throughout the year, both from a compliance perspective and to ensure that the client's needs are being met. Sometimes, this reveals things like an account that is too small and should probably be closed. I recently reviewed an account that I believed was too small, so I drew up the request to close the account and had it approved by our Discretionary Committee. I am now working with an outside attorney to get the assent of the remaining beneficiaries to close the account and distribute the remaining funds.

8. Other examples of client requests would be IRA distributions, charitable and personal gifting, and basic tax planning advice. I also draft correspondences explaining to clients how their individual trusts work.

9. Client meetings are an integral part of my job, and often require a lot of time to prepare for. The purpose of many client meetings is to assess the individual goals and risk tolerances of that particular client and to use the information gathered to build an appropriate portfolio to meet their goals. Prior to the meeting, I pull the client's trust documents and investment record to help determine the specific needs of the client as well as what is permissible under the terms of the trust. I also create presentations for these meetings, which often includes specific financial analysis and suggestions for the client.

10. I review the asset allocations on each account periodically as well. To determine the appropriate asset allocation, I look at the type of account or trust, talk to the client to determine their specific goals and risk tolerances, and consider our asset allocation guidelines (which differ somewhat between U.S. Trust and Bank of America). All of this information is used to determine the appropriate percentage of stocks, bonds and other investments for that particular account. If I believe the allocation should be changed, I write a letter to the client advising them of my opinion.

11. Because I do handle such a wide variety of tasks, and I handle all of the client needs, I have a lot of discretion in my position and the ability to run my accounts as I see fit.

12. I set my own schedule during the day and have a lot of flexibility in setting my own hours, which I often set based on client needs. If I need to adjust my hours or be away from the office, I do not have to get permission or tell my manager. Rather, I just ensure that someone in the office can provide coverage for my accounts.

I declare under penalty of perjury under that the foregoing is true and correct.

Executed at Boston, Massachusetts, on August 12, 2008.

_____
Robert Rudnick