UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EUGENE LUMLEY, Individually and on Behalf of All Other Persons Similarly Situated,

                Plaintiff,

-against-

UNITED STATES TRUST COMPANY, N.A., BANK OF AMERICA, N.A., JOHN DOES #1-10, Jointly and severally,

                Defendants.

No. 08 CV 3993 (TPG) (AJP)

**DECLARATION OF SLOAN SAVERINE IN SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR APPROVAL OF COLLECTIVE ACTION NOTICE**

I, Sloan Saverine, declare as follows:

1. I have personal knowledge of the matters contained in this declaration, except where such facts are stated to be based on information and belief, and those facts I believe to be true. I make this declaration in support of Bank of America, National Association's opposition to Plaintiff Eugene Lumley's Motion for Approval of Collective Action Notice. If called to testify to the matters set forth in this declaration, I could do so competently.

2. I am currently a Trust Officer at Bank of America, National Association ("Bank of America"). Prior to my employment with Bank of America, I was employed by the United States Trust Company, N.A. ("U.S. Trust") where I held the officer title of First Level Officer ("FLO"). I understand that the Plaintiff in this case is seeking to represent other current and former Bank of America and U.S. Trust employees, including me. I know that I would be eligible to participate as a member of the class if this case is certified as requested by Plaintiff Eugene Lumley. I understand that the lawyers who interviewed me and assisted in preparing this declaration for me represent Bank of America and do not represent my personal interests. I am making this statement voluntarily and without coercion.

3. I started working at U.S. Trust in 1998 in the functional job title of Trust Assistant. I did not have an officer title at that time. After about two and a half years, I was promoted to an FLO officer title and my functional title became Trust Officer. After approximately four years as an FLO, I was promoted to Assistant Vice President. In August 2005, I left U.S. Trust to work for Bank of America Private Bank, where I remain today.

4. My role as a Trust Officer was a unique hybrid, one that I believe was very different than the positions held by other U.S. Trust FLO employees. In my position, I drew on my experiences as a Trust Assistant in supporting the accounts of two of the more senior Trust Officers in the office, but I also developed my own accounts.

5. With regard to the accounts of the senior Trust Officers, my duties included opening and closing accounts, trouble shooting any problems or requests for the accounts and handling any requests that the client might contact me with directly. For example, clients would call when a statement needed to be corrected or when they were in need of money. These trouble-shooting responsibilities were often "5 alarm emergencies" that needed to be handled instantly for the client and varied significantly in what they involved.

6. In my role, there were many distinct issues I needed to handle and they would arise frequently. While the client would contact the senior Trust Officer directly with regard to their accounts, and they would then ask me to handle the client request, the Trust Officer did not give me direction as to how to handle the request. Rather, I was expected to run with and resolve client requests as needed.

7. In this role, I had a significant amount of interaction with the senior Trust Officers because we all needed to be on the same page to manage client relationships. I viewed us as a team and did not feel that I was closely supervised.

8. With my own accounts, I served as the main point of contact for the client and worked hard to develop my relationship with them; in particular, I would advise them on planning issues, meet with them regularly and process discretionary requests.

9. I also helped train and oversee the four Trust Assistants located in

Connecticut. While they did not technically report to me, they often came to me with questions about procedures and their responsibilities. There was a lot of communication between the offices and I often helped them out. As a Trust Assistant, I had helped create a manual, which I continued to use once I became a Trust Officer, and I passed the manual on to the other Trust Assistants.

10. In my day to day duties, I set my schedule of how I would prioritize my day, but client requests always came first and took precedence over other work. My typical day would include working on existing client needs, doing a few transactions – such as a wire distribution or a check request for a client – and working on a number of special projects.

11. Examples of special projects included obtaining information on trust remainderman, requesting missing information and updating the records appropriately. Another example would be pricing for accounts; in particular, exploring pricing options and determining the best account option for the client. I would also summarize trust agreements for the senior Trust Officers. Another example would be a fee project – when the bank would implement a new few schedule, I would apply it to all of the relationships.

12. Given my expertise in trust administration, another one of my duties involved working on acquisition teams during the period of rapid growth at US Trust. I would visit new offices and train Trust Assistants and Trust Officers on US Trust's trust operations. To do the training, I would rely on a mix of materials I created and my personal knowledge, as well as materials provided by the company. While Trust Assistants received a manual covering the basic processes, I would sit with the Trust Assistants and actually explain how the system worked, including best practices on how best to use the manual. Even more importantly, I trained these Trust Assistants on how to handle situations that were not covered in the manual.

13. I also sat on a number of committees. I was a member of the Policies and Procedures Committee for U.S. Trust which set policies and procedures for Trust Administration and Portfolio Management. There were 10 to 15 employees on this company-wide committee and I was nominated to be a member based on recognition of my strong knowledge of the

policies that were currently in place. The committee met at least once a week for a few hours.

14. I also sat on the Regional Investment Review Committee and the Trust Oversight Committee and I was Secretary of both committees. The committees were linked and reviewed all account activity and exceptions for, respectively, investment accounts and trusts. This was to ensure compliance with Reg-9 government practices, which require diversification and the proper administration of accounts, among other things. In addition, we would review all new accounts and all accounts that were leaving the region. There were three other members of each of these committees – the Regional Chair, a member of the compliance department and I all sat on both committees, and the Investment Department Head and the Compliance Department Head were also members of their respective committees. These committees each met once a month.

15. I had a significant amount of day to day discretion and independent judgment in all of my duties and worked on a large variety of tasks. I believe that the mix and type of job duties I performed in my position was different than the duties performed by other individuals with the FLO officer title. I also believe that the training that I did, participation on various committees and performance of special projects made the job that I did different than the jobs held by other individuals with the FLO officer title.

I declare under penalty of perjury under that the foregoing is true and correct.

Executed at Westport, Connecticut, on August 11th, 2008.

_____
Sloan Saverine

4