UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EUGENE LUMLEY, Individually and on Behalf of All Other Persons Similarly Situated,<br><br>Plaintiff,<br><br>-against-<br><br>UNITED STATES TRUST COMPANY, N.A., BANK OF AMERICA, N.A., JOHN DOES #1-10, Jointly and severally,<br><br>Defendants. | No. 08 CV 3993 (TPG) (AJP)<br><br>DECLARATION OF STELLA THOMAS IN SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR APPROVAL OF COLLECTIVE ACTION NOTICE |

I, Stella Thomas, declare as follows:

1. I have personal knowledge of the matters contained in this declaration, except where such facts are stated to be based on information and belief, and those facts I believe to be true. I make this declaration in support of Bank of America, National Association's opposition to Plaintiff Eugene Lumley's Motion for Approval of Collective Action Notice. If called to testify to the matters set forth in this declaration, I could do so competently.

2. I am currently a Business Support Manager, a position I have held for the last six months, at Bank of America, National Association ("Bank of America"). Prior to my employment with Bank of America, I was employed by the United States Trust Company, N.A. ("U.S. Trust") where I held the officer title of First Level Officer ("FLO"). I understand that the Plaintiff in this case is seeking to represent other current and former Bank of America and U.S. Trust employees, including me. I know that I would be eligible to participate as a member of the class if this case is certified as requested by Plaintiff Eugene Lumley. I understand that the lawyers who interviewed me and assisted in preparing this declaration for me represent Bank of America and do not represent my personal interests. I am making this statement voluntarily and without coercion.

1

3. I started working at U.S. Trust in or around 1996 as an assistant to then CEO Mike Funk. In 2000, I transitioned into an office manager position and was promoted to the FLO officer title. I understand that U.S. Trust referred to my functional title as "Supervisor Administrative Support." In or about 2004 I was promoted to Assistant Vice President ("AVP"). In early 2007 I took on additional duties working for the Chief Investment Officer.

4. As the office manager, I did whatever needed to be done to keep the office up and running and did so by deciding myself what tasks needed to be accomplished and how. Among other responsibilities, I ensured that the office bills were paid, coordinated with vendors for outside services, managed the charitable contributions for the office and coordinated office build-outs.

5. I also updated the contingency plan for the office. This meant determining who were the critical people in the office based on input from the different departments. I was also involved in testing the phone tree for the contingency plan numerous times a year.

6. I had to make sure that all new employees had full system access, meaning they had a phone, a phone number, an office, a computer and access to all the required applications, in connection with which I would coordinate the work of the in-house technical people and outside vendors to provide access. And, I was also the contact for the various outside vendors like the phone and cable companies, the post office, Federal Express and newspaper delivery services, and would handle any issues that arose related to the outside vendors.

7. In terms of supervisory responsibility, the receptionist reported directly to me and I managed her work flow. This included giving her assignments for long term projects and ensuring that she was not too busy to accomplish her other tasks. I also conducted initial interviews for administrative assistants and receptionists around the region.

8. With regard to the office's charitable contributions, I played an active role in determining obligations under the Charitable Reinvestment Act. Specifically, there was a budget set each year for charitable contributions from the office and a few members of the office worked on a committee to determine and distribute the contributions. I would meet with several

2

sales people to solicit what types of charities or specific non-profits they would like to donate to, which was sometimes based on client relationships. I also tried to spread the wealth among different types of organizations. I would then analyze the input to develop a list of organizations who would receive funds, inform the non-profits of our gift and then would distribute the funds. This often led to repeated requests for donations which I would then include in the evaluation for next year. Occasionally I would join meetings with the non-profit to find out more about what they did, or even to present our donation. I also organized various representatives to attend charitable events to make sure U.S. Trust was well-represented.

9. There were no policies or procedures in place outlining how I should accomplish my job responsibilities as office manager. Rather, I decided that myself.

10. I did not feel like I was supervised in a "hands on" way. If I had a specific question, I would ask my supervisor, but otherwise, I determined how best to perform my job duties.

I declare under penalty of perjury under that the foregoing is true and correct.
Executed at Stamford, Connecticut, on August 14, 2008.

_____
Stella Thomas

3